FITCHBURG RAILROAD COMPANY *vs.* ADDISON GAGE & others.

A provision in the charter of a railroad corporation that proprietors of certain wharves and lands should have the right to construct upon such lands railroads connecting with the main road, and of entering upon that road with their cars and vehicles, "and that the owners and conductors of said cars and vehicles shall be liable to pay the same and no other rates of toll, and be subject to the same rules, regulations and provisions as the owners and conductors of other cars and vehicles travelling upon said main road," does not, since the passage of the *St.* of 1845, *c.* 191, regulating and limiting the rights of connecting roads to use a railroad, give the proprietors of those wharves and lands the right to have goods transported in the cars of the corporation owning the railroad at the same rates and no higher than those charged to others for the same and similar kinds of goods.

A railroad corporation is not obliged as a common carrier to transport goods and merchandise for all persons at the same rates.

In an action to recover for transporting merchandise over a railroad, in the absence of a special contract, evidence is admissible that the plaintiffs raised their charges without giving notice thereof to the defendant, and without his knowing that they were different from what he had been accustomed to pay.

ACTION OF CONTRACT upon an account annexed against Gage Hittenger & Company for the transportation of ice from Fresh and Spy Ponds to Charlestown, over that portion of the plaintiffs' railroad which was formerly the Charlestown Branch Railroad, and from Groton to Charlestown over that portion which has always been known as the Fitchburg Railroad. The case was referred to an auditor, to whose report the defendants took exceptions presenting pure questions of law, and was thereupon reserved by *Bigelow*, J. for the consideration of the whole court, and is stated in the opinion.

*S. Bartlett & D. Thaxter*, for the defendants.

*R. Choate & H. C. Hutchins*, for the plaintiffs.

MERRICK, J. This action is brought to recover the balance of the account annexed to the writ. The defendants admit the transportation for them of all the ice charged to them in the account, and that the several items contained in it relative to the service performed for them are correct. But they insist that the rate of compensation claimed is too large, and that the charges ought to be reduced. They have also filed an account in set-off, claiming to recover back the amount of an alleged overpayment made by them for similar services in the transportation of other quantities of ice belonging to them.

Their claim to be entitled to a diminution in the amount of charges in the plaintiffs' account, and to a recovery of the sum stated in their account in set-off, both rest upon the same ground. They contended and offered to prove at the hearing before the auditor, that while the plaintiffs were transporting the ice they were at the same time hauling over the same portion of their road various quantities of bricks for other parties; that ice and bricks were of the same class of freight, and that ice was as low a class of freight as bricks in regard to the risk and hazard of transportation; and that while they charged the defendants fifty cents per ton for the transportation of ice, they charged other parties only twenty cents per ton for a like service in reference to bricks.

The defendants contended that they were entitled to maintain their claim upon two grounds: first, under the provisions in the

plaintiffs' act of incorporation; and, secondly, upon the general principle that as common carriers they were bound and required to transport every species of freight of the same class for any and all parties at the same rate of compensation; and that they had therefore no right to charge any greater sum for the transportation of ice than that for which they had actually carried bricks for other parties. Neither of the claims was sustained by the auditor, and he accordingly rejected the evidence offered in support of them. In both particulars we think his ruling was correct.

It appears that prior to the purchase by the plaintiffs of the Charlestown Branch Railroad, the defendants, being owners of lands and wharves in Charlestown, built thereon, in pursuance of the provisions in the charter of the Charlestown Branch Railroad Company, certain tracks united with the road and used by them in connection therewith. That charter provided that the owners or conductors of cars and vehicles which entered upon the main road from the tracks and wharves in Charlestown, belonging to individual proprietors, should be liable to pay the same and no other rates of toll, and be subject to the same rules and provisions as the owners and conductors of other cars and vehicles travelling upon the main road. *St.* 1836, *c.* 187, § 4

The Fitchburg Railroad Company purchased the Charlestown Branch Railroad under the provisions of their charter, in which it is provided that they shall have all the powers and privileges and be subject to all the duties, restrictions and liabilities set forth in the *St.* of 1836, *c.* 187, before referred to, in as full and ample a manner as though the same powers and privileges and the same duties, restrictions and liabilities had been granted to and imposed upon them. *St.* 1846, *c.* 21.

The defendants contend that under these provisions the plaintiffs could not lawfully charge them for the freight of their ice any greater compensation than they at the same time received for the carriage of bricks, or other merchandise of a similar class; and consequently that they are entitled to insist upon a diminution of the amount of the plaintiffs' charges, and to recover back the amount specified in their account in set-off. But to this claim there are two sufficient and decisive answers.

In the first place, the defendants did not enter or attempt to enter from the track on their wharves and land on to the main road, nor is any charge made against them for hauling their cars or vehicles over it. This is an essentially different thing from the service which was actually performed, and for which compensation is sought to be recovered. The charges made by the plaintiffs are for the carriage of ice over their own road in their own cars; a service performed by them in pursuance of their duty as common carriers. It is said indeed by the defendants that the object and purpose of the provisions in the charter of the Charlestown Branch Railroad Company was to secure to the owners and proprietors of lands and wharves crossed by the main railroad equal rights with each other and with the public. But if that was the precise purpose intended to be accomplished, still the provision is limited and specific, and cannot be extended to service of a different character from that which is exactly and definitely specified. The argument would have great, and perhaps decisive, weight, if the compensation claimed by the plaintiffs were for drawing the cars and vehicles of the defendants over their road ; but it has none in reference to the freight of ice in their own cars, because this kind of service and this mode of doing business was not contemplated when the acts of incorporation relative to the Charlestown Branch Railroad were enacted, and therefore no specific provisions were made concerning it.

But it is also to be considered that, before the plaintiffs were incorporated, the provisions referred to in the charter of the Charlestown Branch Railroad Company had been essentially modified by subsequent legislation. It was ascertained very early after railroads' were brought into use, that it would not only be attended with great inconvenience, but also with imminent hazard and danger to the public, to allow different and independent railroad companies to run their cars on the same track ; and that it was indispensable to the public safety that every car carried upon a railroad should be under the control and direction of the particular company by which it was owned. Accordingly it was provided, that no locomotive engine or other

motive power should be allowed to run upon any railroad constructed under authority of this commonwealth, except such as should belong to and be controlled by the corporation owning and managing such road, unless by their consent; and also that every railroad corporation owning a railroad in actual use should be required, at reasonable times and for a reasonable compensation, to draw over their road the passengers, merchandise and cars of any other railroad corporation which had been duly authorized to enter upon or unite their road with it. *St.* 1845, *c.* 191, §§ 1, 2. After the enactment of this statute, the only right of the proprietors of other railroads to enter or run their cars upon it was under the special provisions contained in it. Thenceforward the defendants and all other persons in similar situation were to be governed by, and to enjoy the privileges granted to them in conformity to, the provisions of the last named statute. If the parties could not agree upon the terms upon which the desired accommodation should be afforded and the service asked for be performed, care was taken in the same statute to provide adequate means by judicial proceedings for the adjustment of all controversies and difficulties of this kind, and the protection of their respective rights and privileges.

It is urged by the defendants that to give to the act of 1845, *c.* 191, any other construction than that contended for by them, would be to render it unconstitutional, inasmuch as no provision is made for awarding damages to them for injuries sustained in the deprivation of their rights. That question cannot arise here. If the act is unconstitutional, then, having no legal force, they would still have a right to enter upon and use with their own cars and vehicles the plaintiffs' road under the provisions of the charter of the Charlestown Branch Railroad Company. But they have not attempted to do anything of that kind. If they wished to contest the validity of the provisions of the latter statute, they should have claimed the right which was originally conferred upon them, and have attempted, or at least have offered, to enter with their own cars and vehicles upon the plaintiffs' road under the first provisions, which they claimed still to remain in full force and in no degree annulled or modi-

fied. As nothing of this kind was done, no facts are presented upon which the supposed constitutional question can be raised.

In the next place, it is contended on behalf of the defendants that the plaintiffs were common carriers ; and that by the principles of the common law they are in that relation required to carry merchandise and other goods or chattels of the same class at equal rates for the public and for each individual on whose account service in this line of business is performed. There is no doubt they are common carriers. That is fully established. *Thomas* v. *Boston & Providence Railroad*, 10 Met. 472. *Norway Plains Co.* v. *Boston & Maine Railroad*, 1 Gray, 263. But by the law of this commonwealth every railroad corporation is authorized to establish for their sole benefit a toll upon all passengers and property conveyed or transported on their railroad, at such rates as may be determined by the directors. Rev. Sts. *c.* 39, § 83. This right however is very fully, and reasonably, subjected to legislative supervision and control ; a provision which may be believed to be sufficient to guard this large conceded power against all injustice or abuse. And in view of this large and unqualified, and therefore adequate supervision, the right of railroad corporations to exact compensation for services rendered, may be considered as conforming substantially to the rule of the common law upon the same subject. This rule is clearly stated by Lawrence, J. in the case of *Harris* v *Packwood*, 3 Taunt. 272 : " I would not however have it understood that carriers are at liberty by law to charge whatever they please ; a carrier is liable by law to carry everything which is brought to him, for a reasonable sum to be paid to him for the same carriage; and not to extort what he will." This is the doctrine of the common law. 2 Kent Com. (6th ed.) 599. Angell on Carriers, § 124. And it supplies substantially the same rule which is recognized and established in this commonwealth by the provisions of *St.* 1845, *c.* 191. The recent English cases, cited by the counsel for the defendants, are chiefly commentaries upon the special legislation of parliament regulating the transportation of freight on railroads constructed under the authority of the government there ; and consequently throw very

little light upon questions concerning the general rights and duties of common carriers, and are for that reason not to be regarded as authoritative expositions of the common law upon those subjects. The principle derived from that source is very plain and simple. It requires equal justice to all. But the equality which is to be observed in relation to the public and to every individual consists in the restricted right to charge, in each particular case of service, a reasonable compensation, and no more. If the carrier confines himself to this, no wrong can be done, and no cause afforded for complaint. If, for special reasons, in isolated cases, the carrier sees fit to stipulate for the carriage of goods or merchandise of any class for individuals for a certain time or in certain quantities for less compensation than what is the usual, necessary and reasonable rate, he may undoubtedly do so without thereby entitling all other persons and parties to the same advantage and relief. It could of course make no difference whether such a concession was in relation to articles of the same kind or belonging to the same general class as to risk and cost of transportation. The defendants do not deny that the charge made on them for the transportation of their ice was according to the rates established by the directors of the company, or assert that the compensation claimed is in any degree excessive or unreasonable. Certainly then the charges of the plaintiffs should be considered legal as well as just; nor can the defendants have any real or equitable right to insist upon any abatement or deduction, because for special reasons, which are not known and cannot therefore be appreciated, allowances may have been conceded in particular instances, or in reference to a particular series of services, to other parties.*

---

* The case of FITCHBURG RAILROAD COMPANY *vs.* FREDERICK TUDOR, argued by the same counsel at the same time, was an action to recover for transportation of ice from Fresh Pond to Charlestown, and was like the principal case in all respects above stated, except that the defendant also offered to prove that he was induced, by the representations of the plaintiffs that they were hauling his ice at the same rates as that of other persons, to pay them a higher rate than they charged to Gage, Hittenger & Company for transporting ice from Fresh and

There remains another question, the determination of which depends upon other and different considerations. The auditor, for the purpose of presenting the question to the determination of the court, rejected evidence offered by the defendants tending to prove that prior to the 22d of February 1855 and down to that time, the plaintiffs had transported for them large quantities of ice from Groton at a much less rate of compensation than the amount charged in their account under date of the 31st January of that year, without having given them notice, and without their knowledge, of any intention to increase the charge for such service. This evidence was rejected, for the reason that the directors of the plaintiff corporation had, prior to the transportation of the ice in the lastnamed item, fixed and raised the rate of transportation of ice on their road from Groton to ninety cents per ton. This evidence ought to have been received. In the absence of any special contract between the parties, it had a tendency to show what was the understanding between the parties on the subject, and what the defendants had a right to consider would be the price to be charged to them for services performed in their behalf. If not controlled, it would

Spy Ponds to Charlestown during the same time. THE COURT *overruled the exceptions,* upon the grounds stated in the principal case.

Upon the points alike in both cases, the defendants cited *Commonwealth* v. *Wilkinson,* 16 Pick. 175 ; *Newburyport Turnpike* v. *Eastern Railroad,* 23 Pick. 326 ; *Worcester* v. *Western Railroad,* 4 Met. 566 ; *Roxbury* v. *Boston & Providence Railroad,* 6 Cush. 429 ; *Murray* v. *County Commissioners,* 12 Met. 458 ; *Thomas* v. *Boston & Providence Railroad,* 10 Met. 472 ; *Hollister* v. *Nowlen,* 19 Wend. 234 ; *Cole* v. *Goodwin,* 19 Wend. 251 ; Angell on Carriers, §§ 78, 109, 123–129 ; *Sandford* v. *Catawissa, Williamsport & Erie Railroad,* 24 Penn. State R. 378 ; *Parker* v. *Great Western Railway,* 7 Man. & Gr. 253, 7 Scott N. R. 835, and 11 C. B. 545 ; *Pickford* v. *Grand Junction Railway,* 10 M. & W. 399 ; *Parker* v. *Bristol & Exeter Railway,* 6 Exch. 702. The plaintiffs referred to some of the same authorities, and also to *Manchester & Lawrence Railroad* v. *Fisk,* 33 N. H. 297 ; 2 Kent Com. (6th ed.) 599 ; Redfield on Railways, 261 ; *Bastard* v. *Bastard,* 2 Show. 81 ; *Crouch* v. *Great Northern Railway,* 9 Exch. 556 ; *Finnie* v. *Glasgow & Southwestern Railway,* 3 Macqueen, 75 ; *Ransome* v. *Eastern Counties Railway,* 1 C. B. N. S. 437 ; *Caterham Railway* v. *London, Brighton & South Coast Railway,* 1 C. B. N. S. 410; *Oxlade* v. *Northeastern Railway,* 1 C. B. N. S. 454.

and ought to have had a material effect upon determining the question concerning the compensation which the plaintiffs were entitled to recover. It might have been controlled either by showing that the defendants did in fact have notice of the new rate of charge established by the directors of the company, or that the notice was communicated generally to all persons, in the usual and ordinary manner, and with such degree of publicity that all persons dealing with them might fairly be presumed to have cognizance of the change.

In this particular therefore the exception to the ruling of the auditor must be sustained; in all others, the exceptions taken to his decisions are overruled.

The case must therefore be recommitted to the auditor for the purpose of hearing the evidence rejected, and any other proofs which the parties may respectively produce relative to the items of charge under date of January 31st, and finding the amount which is due for the services there stated; but for no other purpose whatever. *Exceptions sustained.*